IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

**EDDIE LEE,**

    **Plaintiff,**

    v.                                       CASE NO. 18-3238-SAC

**(FNU) ENGLISH, Warden,
USP-Leavenworth, et al.,**

    **Defendants.**

## MEMORANDUM AND ORDER

Plaintiff brings this *pro se* civil rights action pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971). At the time of filing, Plaintiff was incarcerated at USP-Leavenworth in Leavenworth, Kansas ("USPL"). The Court granted Plaintiff leave to proceed in forma pauperis. The Court entered a Memorandum and Order and Order to Show Cause (Doc. 10) ("MOSC") granting Plaintiff the opportunity to show good cause why his Complaint should not be dismissed or to file a proper amended complaint. This matter is before the Court for screening of Plaintiff's Amended Complaint (Doc. 11). The Court set forth the screening standards in the MOSC.

In his Amended Complaint, Plaintiff alleges that Defendants were "blatantly negligent" in placing him in a cell with black mold. Plaintiff alleges that on August 8, 2018, Officer Helm refused to secure Plaintiff's locker, resulting in the loss of his property. Plaintiff alleges that Helm was supposed to secure Plaintiff's cell and send his property to the SHU, but failed to do so. On September 12, 2018, Property Officer Miers came to Plaintiff's cell and gave Plaintiff his

pictures, legal mail, glasses and MP3 player. Plaintiff alleges that he was still missing a lot of his property.

Plaintiff also alleges that Health Services denied him medical attention. Plaintiff alleges that on August 22, 2018, he was placed in a cell with black mold, causing him to start having complications with extreme shortness of breath. Plaintiff alleges that he was not allowed to seek immediate medical attention or "first aid from [his] asthma inhaler" which he is supposed to have on him at all times. When Plaintiff requested his inhaler from a nurse, she told him he would need to request it at sick call, and that there was no black mold in the cell. Plaintiff alleges that there are no emergency response buttons in the cells and due to the "blatant negligence" of BOP staff he suffered physical and psychological damage. Lastly, Plaintiff alleges that on August 22, 2018, he met with a DHO who threw out his disciplinary report, but Warden English and Lt. Ratz refused to release Plaintiff back to general population, forcing him to spend twenty-two extra days in solitary confinement in a cell with black mold and infested with bugs.

In the MOSC, the Court found that Plaintiff has not alleged facts establishing that he exhausted the administrative tort claim remedy in a proper and timely manner prior to filing this action. Because this Court cannot exercise jurisdiction over an administratively unexhausted claim, the Court found that Plaintiff's potential FTCA claim is subject to dismissal under Fed. R. Civ. P. 12(b)(1). Plaintiff failed to cure this deficiency in his Amended Complaint.

The Court finds that the Amended Complaint fails to state a claim for relief. Deprivations of property do not deny due process as long as there is an adequate post-deprivation remedy. A due process claim will arise only if there is no such procedure or it is inadequate. *See Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *see also Sun v. United States*, 49 F.3d 728, 1995

WL 103351 (5th Cir. March 1, 1995) (extending the holding of *Hudson* to federal prisoners); *Thomas v. Baldwin Cty. Corr. Ctr.*, Civil Action 16-0555-WS-M, 2017 WL 2602029, at *8 (S.D. Ala. April 27, 2017) (finding adequate post-deprivation remedy existed under 28 C.F.R. §§ 542.10 through 542.19, 28 C.F.R. §§ 543.30 through 543.32, and 31 U.S.C. § 3724(a)) (citing *Omran v. United States*, 2015 WL 4134826, at *2 (W.D. La.), *aff'd* 668 F. App'x 131, *cert. denied,* 2017 WL 237657 (2017); *see also Daniels v. Williams*, 474 U.S. 327, 328 (1986) (holding that "the Due Process Clause is simply not implicated by a *negligent* act of an official causing unintended loss of or injury to life, liberty, or property.").

Plaintiff has failed to state a valid Eighth Amendment claim. A prison official violates the Eighth Amendment when two requirements are met. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). "First, the deprivation alleged must be, objectively, 'sufficiently serious.'" *Id*. To satisfy the objective component, a prisoner must allege facts showing he or she is "incarcerated under conditions posing a substantial risk of serious harm." *Id.*; *Martinez v. Garden*, 430 F.3d 1302, 1304 (10th Cir. 2005). The Eighth Amendment requires prison and jail officials to provide humane conditions of confinement guided by "contemporary standards of decency." *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). The Supreme Court has acknowledged that the Constitution "'does not mandate comfortable prisons,' and only those deprivations denying 'the minimal civilized measure of life's necessities' are sufficiently grave to form the basis of an Eighth Amendment violation." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991) (internal citations omitted). Indeed, prison conditions may be "restrictive and even harsh." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). "Under the Eighth Amendment, (prison) officials must provide humane conditions of confinement by ensuring inmates receive the basic necessities of adequate food,

clothing, shelter, and medical care and by taking reasonable measures to guarantee the inmates' safety." *McBride v. Deer*, 240 F.3d 1287, 1291 (10th Cir. 2001) (citation omitted).

The second requirement for an Eighth Amendment violation "follows from the principle that 'only the unnecessary and wanton infliction of pain implicates the Eighth Amendment.'" *Farmer*, 511 U.S. at 834. Prison officials must have a "sufficiently culpable state of mind," and in prison-conditions cases that state of mind is "deliberate indifference" to inmate health or safety. *Id*. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. at 837. "The Eighth Amendment does not outlaw cruel and unusual 'conditions'; it outlaws cruel and unusual 'punishments.'" *Id*. It is not enough to establish that the official should have known of the risk of harm. *Id*.

Because the sufficiency of a conditions-of-confinement claim depends upon "the particular facts of each situation; the 'circumstances, nature, and duration' of the challenged conditions must be carefully considered." *Despain v. Uphoff*, 264 F.3d 965, 974 (10th Cir. 2001) (quoting *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000)). "While no single factor controls . . . the length of exposure to the conditions is often of prime importance." *Id*. As the severity of the conditions to which an inmate is exposed increases, the length of exposure required to make out a constitutional violation decreases. Accordingly, "minor deprivations suffered for short periods would not rise to an Eighth Amendment violation, while 'substantial deprivations. . .' may meet the standard despite a shorter duration." *Id*. (citations omitted).

Plaintiff fails to allege that any named defendant was personally responsible for the alleged unsanitary conditions. It is also unclear how long Plaintiff was exposed to the alleged conditions. Plaintiff alleges no facts showing that a defendant "both knew of and disregarded an

4

excessive risk to [his] health or safety" related to the presence of mold and bugs in his cell. *See Weldon v. Ramstad-Hvass*, 512 F. App'x 783, 794 (10th Cir. 2013). In comparison, a "bare allegation of [the presence of] mold . . . does not create a reasonable inference regarding the sort of threat to [a plaintiff's] mental or physical well being which is necessary for violation of the Eighth Amendment." *Cox v. Grady Cty. Detention Center*, 2008 WL 1925052, at *3–4 (W.D. Okla. April 29, 2008) (citing *Dittmeyer v. Whetsel*, 91 F. App'x 111 (10th Cir. Feb. 11, 2004)).

Plaintiff's claim regarding his confinement in the SHU also fails to state a claim. Plaintiff claims he remained in the SHU for twenty-one days after the DHO allegedly threw out his disciplinary report. The Due Process Clause protects against "deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). "A liberty interest may arise from the Constitution itself, by reason of guarantees implicit in the word 'liberty,' . . . or it may arise from an expectation or interest created by state laws or policies." *Id*. (citing *Vitek v. Jones*, 445 U.S. 480, 493–94 (1980) (liberty interest in avoiding involuntary psychiatric treatment and transfer to mental institution); *Wolff v. McDonnell*, 418 U.S. 539, 556–58 (1974) (liberty interest in avoiding withdrawal of state-created system of good-time credits)).

Liberty interests which are protected by the Due Process Clause are "generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force . . . nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995) (internal citations omitted). Plaintiff does not have a constitutional right to a particular security classification or to be housed in a particular yard. *Meachum v. Fano*, 427 U.S. 215, 224 (1976); *Harbin-Bey v. Rutter*, 420 F.3d 571, 577

(6th Cir. 2005) (increase in security classification does not constitute an atypical and significant hardship because "a prisoner has no constitutional right to remain incarcerated in a particular prison or to be held in a specific security classification")).

The Supreme Court has held that "the Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement." *Wilkinson*, 545 U.S. at 221–22 (citing *Meachum*, 427 U.S. at 225 (no liberty interest arising from Due Process Clause itself in transfer from low-to maximum-security prison because "[c]onfinement in any of the State's institutions is within the normal limits or range of custody which the conviction has authorized the State to impose"). "Changing an inmate's prison classification . . . ordinarily does not deprive him of liberty, because he is not entitled to a particular degree of liberty in prison." *Sawyer v. Jefferies*, 315 F. App'x 31, 34 (10th Cir. 2008) (citing *Templeman v. Gunter*, 16 F.3d 367, 369 (10th Cir. 1994) (citing *Meachum*, 427 U.S. at 225)). Plaintiff has not alleged that his assignment imposed any atypical and significant hardship in relation to the ordinary incidents of prison life. *Cf. Wilkinson*, 545 U.S. at 223–24 (finding atypical and significant hardship in assignment to supermax facility where all human contact prohibited, conversation not permitted, lights on 24-hours-a-day, exercise allowed for only one hour per day in small indoor room, indefinite placement with annual review, and disqualification of otherwise eligible inmate for parole consideration).

Plaintiff does not have a constitutional right to dictate where he is housed, whether it is which facility or which classification within a facility. *See Schell v. Evans*, 550 F. App'x 553, 557 (10th Cir. 2013) (citing *Meachum*, 427 U.S. at 228–29; *Cardoso v. Calbone*, 490 F.3d 1194, 1197–98 (10th Cir. 2007). Moreover, jail officials are entitled to great deference in the internal

operation and administration of the facility. *See Bell v. Wolfish*, 441 U.S. 520, 547–48 (1979). Plaintiff's claims regarding his security classification fail to state a claim for relief.

**IT IS THEREFORE ORDERED BY THE COURT** that this matter is **dismissed** for failure to state a claim.

**IT IS SO ORDERED**.

**Dated in Topeka, Kansas, on this 21st day of August, 2019.**

<u>S/ Sam A. Crow</u>
**SAM A. CROW**
**SENIOR U. S. DISTRICT JUDGE**